**William W. McNEAL, Plaintiff-Appellant, Cross-Appellee,**

v.

**PAINE, WEBBER, JACKSON & CURTIS, INC., Defendant-Appellee, Cross-Appellants.**

**No. 77–2033.**

United States Court of Appeals, Fifth Circuit.

July 10, 1979.

---

Edward L. Savell, Atlanta, Ga., for William W. McNeal.

Theodore S. Bloch, Securities & Exchange Comm., Washington, D.C., for Securities & Exchange Comm., amicus curiae.

Gary W. Hatch, Dom H. Wyant, Atlanta, Ga., for Paine, Webber, Jackson & Curtis, Inc.

Before BROWN, Chief Judge, AINSWORTH, Circuit Judge, and CAMPBELL,* District Judge.

AINSWORTH, Circuit Judge:

■ Appellant William W. McNeal filed this suit on September 3, 1976, seeking damages under the federal securities laws from defendant Paine, Webber, Jackson & Curtis, Inc. He alleged that J. Brian Skone, an account executive for Paine, Webber, continuously engaged during 1971, 1972 and the first half of 1973 in a fraudulent scheme of buying and selling securities for McNeal's account for the purpose of generating commissions for himself in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).[1] In addition, he alleged that Skone purposefully concealed from him the true status of his account and extended credit in connection with the purchase of securities in violation of the margin requirements of Regulation T, promulgated pursuant to section 7 of the 1934 Act, 15 U.S.C. § 78g.[2] McNeal further alleged that he first discovered on or about September 4, 1973 that the value of his account had shrunk from approximately $179,000 to approximately $19,000 as a result of Skone's fraudulent conduct. He therefore sought recovery of $160,000 damages from Paine, Webber, as a controlling person under section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), on the basis of its employee Skone's violations of section 10(b) and section 7.[3]

---

* District Judge from the Northern District of Illinois, sitting by designation.

1. The buying and selling of securities by a broker for a customer's account, without regard to the customer's investment interests, for the purpose of generating commissions is commonly known as "churning." Churning is specifically defined as a "manipulative, deceptive, or other fraudulent device or contrivance" in the SEC's Rule 15c 1–7, 17 C.F.R. § 240.15c 1–7, and is therefore illegal under section 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o (c)(1) (applicable to trading in the over-the-counter market). In addition, courts have held that churning is illegal as a "device, scheme, or artifice to defraud" under Rule 10b–5, 17 C.F.R. § 240.10b–5, and section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b). See Newburger, Loeb & Co. v. Gross, 2 Cir., 1977, 563 F.2d 1057, 1069; Carras v. Burns, 4 Cir., 1975, 516 F.2d 251, 258; Landry v. Hemphill, Noyes & Co., 1 Cir., 473 F.2d 365, 368 n. 1, cert. denied, 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); Hecht v. Harris, Upham & Co., 9 Cir., 1970, 430 F.2d 1202.

2. Section 7 makes it unlawful for any broker "to extend or maintain credit or arrange for the extension or maintenance of credit to or for any customer" in contravention of rules and regulations prescribed by the Federal Reserve Board, in this case Regulation T. 15 U.S.C. § 78g(c). Section 7(f), as amended in 1970, also makes it unlawful "for any United States person . . . to obtain, receive, or enjoy the beneficial use of a loan or other extension of credit from any lender . . . for the purpose of (A) purchasing or carrying United States securities . . . , if, under this section or rules and regulations prescribed thereunder, the loan or other credit transaction is prohibited . . . ." 15 U.S.C. § 78g(f).

3. The existence of an implied private cause of action for violations of section 10(b) and Rule 10b–5 is well established. E. g., Ernst & Ernst v. Hochfelder, 425 U.S. 185, 196, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976); Superintendent of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971).

The existence of an implied private cause of action for violations of section 7 and Regulation T, however, is less certain. The addition in 1970 of section 7(f), 15 U.S.C. § 78g(f) (see note 2 supra ), and the promulgation of Regulation X pursuant thereto, made it illegal to obtain, as well as to extend, credit in violation of the margin rules, therefore casting in doubt the rationale of holdings in this circuit and others broadly granting borrowers a cause of action for margin violations. Compare, e. g., Pearlstein v. Scudder and German, 2 Cir., 1970, 429 F.2d 1136; McCormick v. Esposito, 5 Cir., 1974, 500 F.2d 620 (recognizing an implied private cause of action for margin violations without regard to relative culpability of broker and client) with, e. g., Utah State University v. Bear, Stearns & Co., 10 Cir., 1977, 549 F.2d 164 (holding, in absence of allegation of fraud, that no private right of action exists for violations of Regulation T); Bell v. J. D. Winer & Co., S.D.N.Y.1975, 392 F.Supp. 646 (holding that section 7(f) effectively creates an in pari delicto defense where borrowers were equally culpable

The district court concluded that both the section 10(b) and section 7 claims were barred by the applicable statute of limitations and therefore dismissed McNeal's complaint. We reverse, disagreeing with the district court as to the applicable period of limitations, and remand the case to the district court for further proceedings.

## Basic Principles

■■ Neither section 10(b) nor section 7 of the Securities Exchange Act expressly creates a private right of action for its enforcement. Hence, neither section fixes a specific period of limitations within which a private litigant must bring suit for damages. Nor is there any federal statute of limitations generally applicable to suits arising under provisions of federal statutory law which fail to specify a limitations period. As a result, the courts must fix, as a matter of federal common law, a period of limitations for suits based upon the various provisions of the federal securities laws which give rise to an implied private right of action.

■ The basic rule that has emerged is that a court should apply the period which the forum state applies to the state cause of action bearing the closest substantive resemblance to the implied cause of action arising under the federal securities laws.[4] By dint of repeated application in every

participants in de minimis margin violations by brokers). Furthermore, recent Supreme Court decisions have restricted the implication of private causes of action in general. *See Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *reliance on those cases, several district courts* have recently held that section 7 does not create a private right of action in any circumstances because the individual investor is not, as *Cort* and *Piper* require, " 'one of the class for whose especial benefit the statute was enacted.' " *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088. *See, e. g., Stern v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 1978 CCH Fed.Sec.L.Rep. ' 96,528 (D.Md.1978), *appeal pending,* 4 Cir., No. 78 1377; *Schy v. Federal Deposit Insurance Corporation,* E.D.N.Y.1977, 465 F.Supp. 766, *appeal pending,* 2 Cir., No. 77 7581.

In this case, the plaintiff (McNeal) alleged that Paine, Webber's employee (Skone) affirmatively concealed the fact that his accounts did not contain sufficient equity to comply with the margin requirements by informing him that he could ignore margin calls from Paine, Webber's offices. The district court held that on those facts McNeal had a cause of action under section 7. We express no opinion as to the correctness of that conclusion. If at some future juncture in this litigation McNeal's right of recovery depends upon the validity of his section 7 claim, we can at that time determine in what circumstances, if any, section 7 gives rise to an implied private right of action.

4. The roots of the rule requiring resort to state law lie in early Supreme Court decisions holding that state statutes of limitations generally govern the timeliness of federal causes of action unless Congress has specifically provided otherwise. *Campbell v. City of Haverhill,* 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895); *McCluny v. Silliman,* 28 U.S. (3 Pet.) 270, 7 L.Ed. 676 (1830). *See generally* Hill, *State Procedural Law in Federal Nondiversity Litigation,* 69 Harv.L.Rev. 66, 79-80 (1955). In those holdings, the Court relied primarily on the Rules of Decision Act, 28 U.S.C. § 1652, which provides: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." More recently, in a suit upon a collective bargaining contract under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, the Court applied a state statute of limitations as a matter of discretion, rather than establishing a uniform federal period, to avoid what it termed a "drastic sort of judicial legislation." *International Union v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966).

Despite the general practice, from *McCluny* to *International Union,* of applying state statutes of limitation, it is clear that the question is one of federal law, *e. g., International Union v. Hoosier Cardinal Corp.,* 383 U.S. at 701, 86 S.Ct. at 1110-11, and that the federal judiciary has the power under Article III of the Constitution to devise a period of limitations applicable to federal causes of action for which Congress has not expressly provided. The Rules of Decision Act does not impinge upon that power since it requires application of state laws only "in cases where they apply." *See, e. g., Campbell v. City of Haverhill,* 153 U.S. 610, 615, 15 S.Ct. 217, 219, 7 L.Ed. 676 (1895) (suggesting that the limiting language of the Act gives courts "a certain discretion with respect to the enforcement of state statutes"); *McAllister v. Magnolia Petroleum Co.,* 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958) (applying Jones Act's period of limitations to claim for unseaworthiness under general maritime law).

circuit, with the evident approval of the Supreme Court[5] and without legislative reaction by Congress, that basic rule is at this point definitely established. We are therefore compelled to apply it rather than follow the logically appealing course of applying the period of limitations applicable to a similar cause of action expressly provided in the federal securities laws.[6] Although the latter approach would lead to desirable uniformity in securities litigation from state to state and would eliminate the need to engage in difficult and essentially esoteric comparisons of federal and state remedies, reform must await congressional action.[7] In the meantime, we must scrutinize the substantive law of the forum state (in this case, Georgia)[8] to determine which local causes of action most closely resemble those relied upon by the plaintiff under section 10(b) and section 7 and to apply the period of limitations to which that inquiry leads.

## The Section 10(b) Claim

■ In regard to McNeal's claim under section 10(b) and Rule 10b–5, we must choose between applying the two-year statute of limitations applicable to actions brought under section 13 of the Georgia Securities Act of 1957 based upon fraudulent practices in violation of section 11 of that act,[9] or the four-year statute applicable

5. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976).

6. For example, in this case where the gravamen of the 10b 5 allegation is churning, a court might logically look to the limitations period provided in section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b), for actions based upon transactions in the over-the-counter market in violation of section 15(c)(1), 15 U.S.C. § 78o(c)(1). *See* SEC Rule 15c 1 7, 17 C.F.R. § 240.15c 1 7 (specifically defining churning to constitute a violation of section 15(c)(1)). The rule requiring application of the limitations period appurtenant to an analogous state cause of action, however, precludes reference to section 29(b). *See also Hecht v. Harris, Upham & Co.*, N.D. Cal., 1968, 283 F.Supp. 417, 441 42, *aff'd*, 9 Cir., 1970, 430 F.2d 1202; *Maher v. J. R. Williston & Beane, Inc.*, S.D.N.Y.1967, 280 F.Supp. 133, 140 43; *Lorenz v. Watson*, E.D.Pa., 1966, 258 F.Supp. 724 (holding that limitations period of section 29(b) is not applicable by its own force, as a matter of statutory construction, to actions alleging churning in violation of section 10(b) and Rule 10b 5).

7. The American Law Institute's proposed recodification of the federal securities laws contains a federal statute of limitations applicable to all claims, express and implied, arising under the securities laws. ALI, Federal Securities Code, Proposed Official Draft (March 15, 1978), § 1727.

8. Previous decisions in this circuit have routinely required reference to the substantive law of the forum state. *See Dupuy v. Dupuy*, 5 Cir., 1977, 551 F.2d 1005, 1023 24 n. 31; *Nortek, Inc. v. Alexander Grant & Co.*, 5 Cir., 1976, 532 F.2d 1013, 1015; *Hudak v. Economic Research Analysts, Inc.*, 5 Cir., 1974, 499 F.2d 996, 999; *Sargent v. Genesco*, 5 Cir., 1974, 492 F.2d 750, 758. Hence, although it is arguably more sensible in some respects to look to the substantive law of the state where the violation occurred or where the underlying transactions took place, we are bound by precedent to look only to the law of the forum state. To require otherwise would serve only to add another variable to the already overly complicated search for an appropriate period of limitations.

9. Section 11 of the Georgia Securities Act of 1957 provides, in pertinent part:

It shall be a fraudulent practice and it shall be unlawful:

. . . . .

(b) For any person, in connection with any transaction or transactions in this State which involve any offer to sell or to buy securities, or any sale or purchase of securities . . either directly or indirectly (1) to employ any device, scheme or artifice to defraud, or (2) to engage in any act, practice, transaction or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller.

1957 Georgia Laws, p. 159.

Section 13 of the Georgia Securities Act of 1957 provides the following remedy for violation of section 11 and of the other substantive provisions of the Act.

Every sale or contract for sale in violation of any of the provisions of this Act, or of any order issued by the Commissioner under any provision of this Act, shall be voidable at the election of the purchaser. The person making such sale or contract for sale, and every director, officer, salesman or agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser in any action at law in any court of competent jurisdiction upon tender to the seller, in person or in open court, of the securities sold or of the contract made for the

to actions brought under Georgia's general fraud statute.[10] The district court concluded that the two-year statute was applicable and granted Paine, Webber's motion for summary judgment because McNeal filed his suit in 1976, more than two years after he first discovered the alleged churning.[11]

full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action or tender under this section. Provided:
(a) That no action shall be brought under this section for the recovery of the purchase price after two years from the date of such sale or contract for sale; . . .
(c) Nothing in this Act shall limit any statutory or common law right of any person in any court for any act involved in the sale of securities.

1957 Georgia Laws, p. 161.

We note, in passing, that the Georgia Securities Act of 1957 was replaced, in toto, by the Georgia Securities Act of 1973, Georgia Code Ann. §§ 97–101 et seq. (1976). Sections 11 and 13 of the earlier Act, quoted above, were replaced by Georgia Code §§ 97–112 and 97–114. The latter sections were in turn amended in 1974 and 1975, Georgia Code Ann. §§ 97–112, 97 114 (1976). However, as the parties apparently do not dispute, in determining the statute of limitations applicable to McNeal's claim under section 10(b), we look to state law as it existed when the cause of action accrued, in this case September 3, 1973, when the alleged churning was discovered. In adopting that rule, as a matter of federal law, we reject the approach taken by the district court in *Mooney v. Tallant*, N.D.Ga., 1975, 397 F.Supp. 680, 681 n. 2 (relying on the savings provision of the Georgia Securities Act of 1973 in applying the law applicable when the acts complained of took place).

It is undeniably untidy to insist that the statute of limitations applicable to a federal cause of action vary from time to time dependent upon changes in local law. *See, e. g., Fox v. Kane-Miller Corp.*, D.Md.1975, 398 F.Supp. 609, 641, *aff'd*, 4 Cir., 1976, 542 F.2d 915 (". . . it would seem that a federal court should not, because of subsequent changes in state statutory law, move its own federal 10b–5 limitations period up and down like a yo-yo on a string"). That circumstance, however, is an unavoidable side effect of the basic rule requiring application of state statutes of limitation. At best, a court can take into account the desirability of continued application of the same period of limitations as a factor tipping the scales in favor of looking to either of two or more state causes of action which are each comparable to that available under section 10(b). *See, e. g., Nickels v. Koehler Management Corp.*, 6 Cir., 1976, 541 F.2d 611, 618.

We conclude, however, that the four-year statute is applicable and that summary judgment on the section 10(b) claim was therefore erroneous.

In concluding that the cause of action available under Georgia's general fraud statute, rather than that available under

10. Georgia's general fraud statute provides in pertinent part:
105–301. *Fraud and damage give right of action.*—Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action.
105–302. *Deceit; misrepresentation of fact; concealment of fact; knowledge of falsehood.* —Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of the falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

105–304. *Fraud by acts or silence.*—A fraud may be committed by acts as well as words

Georgia Code Ann. § 105–301 et seq. (1968).

The four-year statute of limitations applicable generally to actions for injuries to personalty applies to actions based on fraud. Georgia Code Ann. § 3–1002 (1975). *See, e. g., Quinn v. Forsyth*, 1967, 116 Ga.App. 611, 158 S.E.2d 686 (applying four-year limitations period to common law action for securities fraud).

11. As a matter of federal law, the period of limitations applicable to implied causes of action under section 10(b) and section 7 begins running only when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the alleged violations. *E. g., Azalea Meats, Inc. v. Muscat*, 5 Cir., 1967, 386 F.2d 5, 8–9; *Vanderboom v. Sexton*, 8 Cir., 1970, 422 F.2d 1233, 1240. In reaffirming that rule, as originally set forth in this circuit in *Azalea Meats*, we observe that the test for determining when the period begins to run is an objective one, depending upon when the plaintiff should have discovered the alleged violation in the exercise of reasonable diligence, and not a subjective one, depending merely on when the plaintiff actually discovered the violation. We thus caution against reliance on dictum which speaks loosely of a subjective test. *See Hudak v. Economic Research Analysts, Inc.*, 5 Cir., 1974, 499 F.2d 996, 1000 n. 5; *Sargent v. Genesco, Inc.*, 5 Cir., 1974, 492 F.2d 750, 758.

the Georgia Securities Act of 1957, most closely resembles the 10b–5 cause of action relied upon here, we find determinative the fact that McNeal seeks damages against a broker, on account of alleged churning of his account, and does not seek rescission from an actual purchaser or seller of securities. Although the language of section 11 of the Georgia Securities Act of 1957 mimics that of Rule 10b–5 in prohibiting employment of "any device, scheme or artifice to defraud,"[12] the remedy made available by section 13[13] is expressly limited to an action for rescission by a purchaser against a seller. As such, the remedy is ineffective to a 10(b) plaintiff such as McNeal, who was allegedly injured by Paine, Webber's actions as an agent rather than as a principal. For that reason, McNeal could not frame his action as one for rescission. Although McNeal sought damages in an amount equal to the total decline in value of his account during the period in which the churning allegedly occurred, and thus sought restoration to the status quo ante, the normal effect of rescission, it is not clear that in a churning case damages of that sort are available.[14] Any similarity between the damages remedy available to McNeal under section 10(b) and the rescission remedy available under the Georgia Securities Act of 1957 is therefore, at best,

uncertain. By contrast, there is no reason to doubt that Georgia's general fraud statute would support an action for money damages based on the churning of McNeal's account. Ga.Code Ann. § 105–301 et seq. (1968).[15] Hence, we conclude that the cause of action available under the general fraud statute more closely resembles McNeal's cause of action under section 10(b) than that available under the Georgia Securities Act of 1957. Therefore, the four-year statute of limitations applicable to actions under the fraud statute is applicable to the section 10(b) claim asserted here.

In so holding, we distinguish the prior decision of this court in *Hudak v. Economic Research Analysts, Inc.*, 5 Cir., 1974, 499 F.2d 996. In that case, the plaintiff sought the return of the purchase price of worthless securities bought for him by a broker who converted the plaintiff's funds to his own use. The court concluded that the cause of action available under the Florida sale of securities law (identical, for practical purposes, to the Georgia Securities Act of 1957) more closely resembled the plaintiff's cause of action under section 10(b) than did the cause of action available under the Florida general fraud statute.[16] The court stressed, however, "the congruence between the specific remedy sought here—return of the purchase money—and the remedy of

**12.** *See* note 9 *supra.*

**13.** *Id.*

**14.** The law is unclear as to what amount of damages is recoverable in a successful churning suit. *See generally* 6 Loss, Securities Regulations 3676 79. The approach which has the most support in case law is to allow recovery of losses directly attributable to trading (*i. e.*, commissions and also, perhaps, capital gains and transfer taxes). *See, e. g., Carras v. Burns*, 4 Cir., 1975, 516 F.2d 251, 259; *Stevens v. Abbott, Proctor & Paine*, E.D.Va., 1968, 288 F.Supp. 836, 850. The rationale underlying that conservative approach is to prevent unjust enrichment without taking on the difficult task of apportioning trading losses between churning and ordinary market hazards. Broader approaches, aimed at compensation and deterrence rather than merely at prevention of unjust enrichment, measure damages by the difference in value of the account before and after churning, *see Pierce v. Richard Ellis & Co.*, 62 Misc.2d 771, 310 N.Y.S.2d 266 (Civ.Ct.1970) (a

common law action), or by the difference between the actual experience and the experience of a theoretically properly managed account, *see Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690, 69 Cal.Rptr. 222, 249–51 (1968) (a common law action).

**15.** *See* note 10 *supra.*

**16.** *See also Parrent v. Midwest Rug Mills, Inc.*, 7 Cir., 1972, 455 F.2d 123; *Vanderboom v. Sexton*, 8 Cir., 1970, 422 F.2d 1233; *Fox v. Kane-Miller Corp.*, 4 Cir., 1976, 542 F.2 915; *Berry Petroleum Co. v. Adams & Peck*, 2 Cir., 1975, 518 F.2d 402; *Forrestal Village, Inc. v. Graham*, 1977, 179 U.S.App.D.C. 225, 551 F.2d 411. *But see Nickels v. Koehler Management Corp.*, 6 Cir., 1976, 541 F.2d 611; *United California Bank v. Salik*, 9 Cir., 1973, 481 F.2d 1012; *Mitchell v. Texas Gulf Sulphur*, 10 Cir., 1971, 446 F.2d 90 (applying the period of limitations applicable to general fraud statutes rather than securities statutes).

rescission for which Florida securities law provides a two-year statute." *Id.* at 1000.[17] In this case, there is no "congruence" between the damages remedy sought by McNeal and the rescission remedy available under the Georgia Securities Act of 1957. Hence, the rationale of *Hudak* suggests that it is appropriate in this case to look to Georgia's general fraud law, which does provide a remedy equivalent to that sought by McNeal, to determine the limitations period applicable to McNeal's section 10(b) claim.[18]

### The Section 7 Claim

In determining the limitations period applicable to McNeal's claim under section 7, we must choose again between the two-year limitation applicable to actions brought under the Georgia Securities Act of 1957[19] and the four-year period applicable to actions brought under Georgia's general fraud statute[20] and also to actions for breach of implied contract.[21] The district court con-

cluded that the two-year statute was applicable. We disagree, concluding instead that a four-year period applies because McNeal's asserted cause of action under section 7 more closely resembles the cause of action available to him under Georgia's general fraud statute than that available under the Georgia Securities Act of 1957.[22]

As with McNeal's section 10(b) claim, the critical determinant in electing to apply the four-year limitations period of the general fraud statute is the availability of a damages remedy against a party who is not a principal in a securities transaction. As discussed above, the Georgia Securities Act of 1957 provides no such remedy and hence the cause of action available thereunder does not resemble McNeal's cause of action under section 7 as closely as does that available under the general fraud statute. Hence, as *Hudak* requires, we apply the four-year period of limitations that the forum state (Georgia) would apply to the state cause of action bearing the closest

17. In *Nortek, Inc. v. Alexander Grant & Co.*, 5 Cir., 1976, 532 F.2d 1013, this court applied the statute of limitations found in Florida's securities law even though the action was one for damages rather than rescission and was against an accountant rather than a buyer or seller. In so doing, however, the court treated the issue summarily in a single sentence without mention of Florida's general fraud law.

18. The court also stressed in *Hudak* that neither Florida securities law nor section 10(b), as it was interpreted at that time in this circuit, included a strict scienter requirement as an element of liability. Florida's general fraud law, however, did require scienter. Subsequently, the Supreme Court has held that proof of scienter is necessary to liability under section 10(b). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). To the extent that the result in *Hudak* (*i. e.*, reference to Florida's securities law rather than to its general fraud law) depends on the relaxed scienter requirement, that result has been undermined by *Hochfelder*. *But see Forrestal Village, Inc. v. Graham*, 1977, 179 U.S.App.D.C. 225, 228, 551 F.2d 411, 414 (looking to blue sky law rather than general fraud law even though former did not require scienter). In this case, however, we do not rely on comparison of scienter requirements because it is not clear to us whether there is such a requirement under the Georgia Securities Act of 1957. Hence, we emphasize the comparison of available reme-

dies and distinguish *Hudak* primarily on that basis.

19. *See* note 9 *supra*.

20. *See* note 10 *supra*.

21. *See* Ga.Code Ann. § 3–706 (1975).

22. Neither party urges on appeal that we should apply the twenty-year period of limitations applicable under Georgia law to "[a]ll suits for the enforcement of rights accruing to individuals under statutes." Ga.Code Ann. § 3–704 (1975). We agree with the district court's conclusion that "application of this period would not be in strict compliance with *Hudak* and *Sargent*, supra, which require this court to apply the limitation period of the state remedy which most closely embodies the purposes underlying § 7. Section 3–704 merely provides an omnibus time provision for all statutorily-created remedies which do not themselves specify an applicable limitation period." *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, N.D.Ga., 1977, 429 F.Supp. 359. *But cf. Hornblower & Weeks-Hemphill, Noyes v. Burchfield*, S.D.N.Y.1973, 366 F.Supp. 1364 (applying New York's three-year limitation period for liabilities imposed by statute where no allegation of scienter is made and section 7 claim does not constitute part of a section 10(b) claim).

resemblance to McNeal's implied cause of action under section 7.[23]

### Conclusion

In sum, we conclude that the four-year period of limitations applicable to actions under Georgia's general fraud statute is applicable to the implied causes of action alleged here under both section 10(b) and section 7 of the Securities Exchange Act. In so concluding, we rely on the firm rule laid down in *Hudak* requiring reference to the period of limitations applicable to the state cause of action bearing the closest resemblance to the implied cause of action asserted under the federal securities laws. In applying that rule in this case involving a claim for damages against a broker based on alleged churning and margin violations, we look to the period of limitations applicable to an action under the forum state's general fraud law and not to the period applicable to an action under its securities laws. We thus reach a result different than this court did in *Hudak*, a case involving a claim for return of funds converted by a broker for his own use. The divergent results are compelled by the established rule of law. At this point only Congress can impose a different rule of a simpler, more predictable, and more uniform nature.

REVERSED AND REMANDED.

---

**23.** We note that McNeal alleges as an element of his section 7 claim that Paine, Webber's employee took affirmative steps to mislead him into believing that the margin requirements were satisfied. In essence, McNeal thus alleges scienter on the part of Paine, Webber. Furthermore, he essentially alleges that the section 7 violation and the churning are part of one fraudulent scheme. As such, McNeal's cause of action differs significantly from a cause of action based on breach of an implied contract between broker and customer (the broker having impliedly contracted to adhere to margin regulations). Scienter would not be a necessary element of such an action. Thus, in applying a four-year period of limitations to McNeal's cause of action, we do so with reference to Georgia law regarding general fraud rather than regarding breach of contract.