L. D. MURRAY, Jr. and Martha Murray, as Trustees of the Waring P. Carrington Trust and Martha Murray in her own name, Plaintiffs,

v.

SHEARSON HAYDEN STONE, INC. and Roger Smith, Defendants.

Civ. A. No. C79–404.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 6, 1980.

John M. Sikes, Jr., Macey & Zusmann, Atlanta, Ga., for plaintiffs.

Peter J. Anderson, Peterson, Young & Self, Atlanta, Ga., for defendants.

ORDER

ORINDA D. EVANS, District Judge.

This action alleging violations of Sections 10(b) and 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78o(c)(1), as amended, and the Securities and Exchange Commission Rules promulgated thereunder, as well as provisions of Georgia law, is before the Court on Defendants' Motion for Summary Judgment. Defendants argue that the federal and state claims raised in the Complaint are barred by the applicable statute of limitations.

■ The statute of limitations to be applied to Plaintiffs' federal securities claims is the four-year period used for general fraud actions found in Ga.Code Ann. § 3–1002. *See McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888 (5th Cir. 1979). Plaintiffs' pendent state claims are

governed either by § 3–1002 or by the two-year period found in Ga.Code Ann. § 97–114. As to when the limitations period begins to run, the court in *McNeal* said:

As a matter of federal law, the period of limitations applicable to implied causes of action under section 10(b) and section 7 begins running only when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the alleged violations. *E. g., Azalea Meats, Inc. v. Muscat*, 5 Cir., 1967, 386 F.2d 5, 8–9; *Vanderboom v. Sexton*, 8 Cir., 1970, 422 F.2d 1233, 1240. In reaffirming that rule, as originally set forth in this circuit in *Azalea Meats*, we observe that the test for determining when the period begins to run is an objective one, depending upon when the plaintiff should have discovered the alleged violation in the exercise of reasonable diligence, and not a subjective one, depending merely on when the plaintiff actually discovered the violation. (at 893, n.11)

With respect to the state statute of limitations as applied to the state claims, the limitations period begins to run when the cause of action accrues, which is when the plaintiff could first have maintained the action to a successful result. *See Mobley v. Murray County*, 178 Ga. 388, 173 S.E. 680 (1934); *Worrill v. Pitney-Bowes, Inc.*, 128 Ga.App. 741, 197 S.E.2d 848 (1973).

██ Plaintiffs filed the present action on March 12, 1979, against their former brokerage firm and their former broker, alleging securities violations and fraud and seeking damages in excess of $200,000.00. Plaintiffs opened two accounts with Defendants in August of 1972. From that time through July of 1974, options, warrants and stocks were traded on a long and short term basis in the accounts. On July 2, 1974, Plaintiff L. D. Murray received a margin call, in the form of a mailgram, notifying him of a deficit balance of $12,000.00 in one of the accounts. Having previously believed that the account was in a net profit position of $100,000.00, Plaintiffs chose to discontinue their accounts after learning of the deficit. Defendants contend that Plaintiffs had notice of any possible securities violation or fraud when they received the margin call and learned of the unexpected deficit, and therefore the limitations period commenced in July, 1974, and had run prior to the filing of the action. Plaintiffs argue that in July of 1974 they were not aware of facts sufficient to cause them to suspect fraud by Defendants, and that the earliest possible time they may have had such notice was in the spring of 1977, when Plaintiff L. D. Murray decided to attend a course dealing with securities.

Although a motion to dismiss under Rule 12(b), Fed.R.Civ.P., is the more typical method of raising a statute of limitations issue, Defendants' summary judgment motion is proper in this case because the Court must look beyond the pleadings to reach a decision on this issue. In particular, both parties direct the Court's attention to the deposition of Plaintiff L. D. Murray, taken on January 18, 1980. Mr. Murray first became aware that his account was losing a substantial amount of money when he received a margin call in July of 1974 (Dep. at 60). Several months later, Mr. Murray went to Defendant Shearson's office and was furnished a tabulation of everything that had happened in the account, which failed to clearly explain to him why substantial losses had occurred (Dep. at 63). At the time Mr. Murray became aware of his substantial losses he discussed the news with his wife but no one else.

Q Did you discuss it with anyone else?

A Not at the time.

Q Why not?

A Well, I didn't know that anything legally wrong had been done. I didn't know that I had any recourse, and I felt very, very poor at the time. I didn't feel I could afford any legal assistance. It wasn't until sometime later that I was told by a common authority, unsolicited, that there was all sorts of things legally wrong and that I should have gotten legal assistance. Also, I didn't know who in town legally was a specialist in that kind of thing. . . . (Dep. at 74–75)

At a later point in his deposition, Mr. Murray again referred to his awareness of the legal aspects of his problem.

Q Back in 1974, after you had met with Michael Post and after you had obtained from him—I believe you said some sort of an analysis, is that correct—some sort of compilation of the trades that had taken place in your account, did you consider going to an attorney?

A Yes, I did, but I didn't know who to go to.

Q And what would have been the reason for going to the attorney back in 1974?

A Well, I was just upset. I thought that I had been lied to. I didn't think; I knew I had been.

Q Did you feel that Shearson Hammill and/or Roger Smith had improperly handled your account?

A Exactly. (Dep. at 83)

Mr. Murray indicated that at the time he received the margin call he was under the impression that the account had realized a profit of at least one hundred thousand dollars ($100,000.00), but in reality the account was below its margin by twelve thousand dollars ($12,000.00). He requested that Defendants refer the matter to their New York office:

Q What did you want the New York office to do?

A I wanted them to review it and see if there was any—I thought first of all that a mistake had been made, that he had gotten it mixed up with somebody else's account. It was just unbelievable to me that anything like that could've happened. I had had an account, you know, for 12 years with Merrill Lynch and made profits every year—you know, income out of it every year, and this was just unreal to me.

Q But then after you received this compilation—whatever it was—this analysis sometime in '74, you felt you had been lied to.

A Yes.

Q Okay. Was it at that time that you asked them to give you some sort of relief?

A Yes; . . . (Dep. at 85–86)

In the present case, the statute of limitations began to run when Plaintiffs should have discovered the alleged violations through the exercise of reasonable diligence, not merely when they actually discovered the violations. *McNeal, supra.* Plaintiffs have alleged that Defendants perpetrated a fraud on them in violation of federal and state securities laws. In *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5 (5th Cir. 1976) (cited in *McNeal*), the court defined "discovery" of fraudulent behavior as "either actual knowledge or notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the violation." (at 8–9).

This Court finds that in July of 1974, Plaintiffs were aware of, or had "discovered," facts sufficient to cause them to suspect fraud by Defendants. After looking at all the facts in a light favorable to Plaintiffs, it is clear that upon receiving the mailgram containing the margin call in mid-1974, Mr. Murray had notice of facts which should have led him to make a reasonable investigation of such a surprising financial turnaround. He had allegedly been told by Defendant Smith that his account had earned a profit of at least $100,000.00, when in fact he owed Defendants $12,000.00 in order to satisfy his margin requirement. A reasonable person, upon receiving such information, would have been suspicious at that point of Defendants' behavior and representations, as was Mr. Murray. In his deposition he admitted that he felt he had been lied to and that he had considered going to an attorney for legal advice. Mr. Murray's deposition gives the undisputed impression that in 1974 he suspected that Defendants had handled his account in an improper manner.

Mr. Murray, his suspicions aroused, should have discovered the alleged violations through the exercise of reasonable diligence. Therefore, under *McNeal, supra,* the applicable statutes of limitations commenced no later than the fall of 1974, the time when Mr. Murray received a statistical

analysis of his account from Defendants and was still unable to determine how the supposed profit of $100,000.00 became a deficit of $12,000.00. Since this action was filed on March 12, 1979, Plaintiffs' federal securities claims are barred by the four-year period in Ga.Code Ann. § 3–1002 and their pendent state claims are barred either by § 3–1002 or the two-year period in Ga. Code Ann. § 97–114.

This Court is aware that the court in *Azalea Meats, supra,* felt that the issue of due diligence in this type of case is better left to the development of full facts at trial rather than a disposition on motions for summary judgment. In this respect the court said:

> A fraud which is flagrant and widely publicized may require the defrauded party to make immediate inquiry. On the other hand, one artfully concealed or convincingly practiced upon its victim may justify much greater inactivity. The presence of a fiduciary relationship or evidence of fraudulent concealment, bears heavily on the issue of due diligence. (at 9).

However, in this case there is no "tangled skein of facts" (*Id.* at 9) nor is there any allegation of fraudulent concealment occurring after the fall of 1974. The alleged fraud can be considered "flagrant" in July of 1974 when Mr. Murray learned that his account had a deficit of $12,000.00 rather than a profit of $100,000.00 as he was allegedly led to believe.

In light of the foregoing analysis, the Court finds that Plaintiffs' claims are time-barred and therefore Defendants' Motion for Summary Judgment is hereby GRANTED. The Clerk of the Court is DIRECTED to enter final judgment for Defendants.