**DREXEL BURNHAM LAMBERT, INC., Plaintiff,**

v.

**Carl A. EDWARDS, Defendant,**

v.

**Kim B. KETCHUM, Additional Defendant in Counterclaim.**

Civ. A. No. C81–272A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 21, 1983.

David W. Porter, David A. Rabin, Morris & Manning, Atlanta, Ga., for Drexel Burnham Lambert and Ketchum.

John W. Chambers, Jr. and John W. Chambers, Sr., Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This action is before the court on a motion by the plaintiff and the third-party defendant to strike certain allegations in the pretrial order and on a motion by defendant Edwards to amend his counterclaim. Plaintiff originally filed its complaint seeking money owed on account on December 17, 1980. The complaint was amended on January 8, 1981 and removed to this court on February 12, 1981.[1] Defendant filed his answer and counterclaim on February 17, 1981. Discovery was conducted by the parties and motions for summary judgment were filed by the plaintiff and third-party defendant on March 11, 1982. The motions for summary judgment were finally denied on October 1, 1982. A pretrial conference was held on June 21, 1983 at which time plaintiff and third-party defendant objected to certain portions of the pretrial order on the grounds that they raised entirely new issues which had not been present in the case prior to that time. The court granted plaintiff and third-party defendant leave to file a properly supported motion to strike and instructed them to document from the record the reasons for their belief that the allegations raised entirely new issues. Plaintiff and third-party defendant then filed their motion to strike and provided exhaustive citations to the record in support of their position. Defendant (plaintiff in the counterclaim) has opposed the motion to strike and has asked, in the alternative, that he be given leave to amend his counterclaim to assert a claim of "churning" and a claim of "negligent supervision of defendant's account."

The court has studied the record and agrees with plaintiff and third-party defendant that the allegations of churning and negligent supervision of account raise new issues which have not been present in the case prior to this time. Plaintiff's original claim sought money owed on account. Defendant's counterclaim alleges six counts: Breach of contract; breach of agreements (dismissed by agreement of counsel during the pretrial conference); vi-

---

1. In reviewing the record the court notes that contradictory allegations have been made regarding the citizenship of Edwards at the time this suit was filed. If Edwards was a citizen of Georgia at the time the suit was filed, then the action could not have been removed on diversity grounds. 28 U.S.C. § 1441(b). Since this issue concerns the jurisdiction of this court, the parties are DIRECTED to submit affidavits establishing Edwards' citizenship on December 17, 1980.

olation of 7 U.S.C. §§ 6b and 23, and 17 CFR § 31.03; breach of fiduciary duties; negligent trading; and common law fraud. From the outset the thrust of defendant's counterclaim has been the allegation that the counterclaim defendants "intentionally and fraudulently failed to appraise counterclaim plaintiff of the margin requirements of the commodities exchange of which it was a member." Counterclaim ¶ 13. This controversy about whether defendants in the counterclaim fraudulently misrepresented the margin requirements of the commodities exchange was the focus of each of the counts of the counterclaim. It was the focus of extensive discovery by both sides. Nothing relating to churning or negligent supervision of the account was ever raised by defendant. On March 11, 1982 Drexel and Ketchum moved for summary judgment on the counterclaim. Edwards' response to the movants' statement of material facts is indicative of his position:

> Edwards does not dispute that Ketchum was Edwards' account executive at Drexel. Edwards does not dispute that he was aware of and acquiesced in all market positions he held. Edwards does not dispute that Ketchum recommended market positions to Edwards. However, Edwards does dispute the statement that he "frequently made his own trading decisions and used Ketchum and Drexel only to execute his orders." Edwards shows that while he did make the final decision as to trades, he did so upon the basis of Ketchum's advice and supposed expertise. ... Edwards does not dispute that he took an active interest in his commodities positions or that he regularly discussed same with Ketchum and generally was aware of his unrealized profit or loss. Edwards does dispute that he understood his margin and account status, if such allegations are intended to mean margin and account status as defined and required by the applicable rules of the commodities exchange, the Commodity Futures Trading Commission, or the Commodities Exchange Act, and other rules and regulations. Edwards' response to

Drexel's statement of material facts, ¶¶ 4, 5, filed April 16, 1982.

Under Local Rule 91.72, the foregoing statements are tantamount to formal stipulations. As such, they negative one of the essential aspects of a churning claim—that the broker conducted excessive trading in the account without the investor's knowledge or supervision. *See McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888, 890 n. 1 (5th Cir.1979).

Not until the pretrial order was filed in February 1983 did Edwards raise for the first time allegations that Ketchum churned his account and that Drexel negligently supervised his account. Defendants in the counterclaim argue that the new allegations raise substantively new issues from those which have been the subject of the litigation thus far. Allegations which are not relevant to matters contained in the pleadings are normally not allowed in the pretrial order. Defendant seeks to correct the defect in his counterclaim by seeking leave to amend the counterclaim.

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend the pleadings "shall be freely given when justice so requires." "However, leave to amend is by no means automatic. The decision to grant or deny leave to amend is within the discretion of the trial court." *Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097 (5th Cir.1979) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). In *Lamar v. American Finance System of Fulton County, Inc.,* 577 F.2d 953 (5th Cir. 1978), the court held that "[w]hether a litigant should be permitted belatedly to tender an entirely new issue, never even suggested before, lies in the sound discretion of the trial court." *Id.* at 954. Relevant factors to be considered by the trial court include undue delay, dilatory motive on the part of the movant, and undue prejudice to the opposing party by virtue of allowing the amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Livingston v. Delta Air Lines, Inc.,* No. C80–431A, Slip Op. at 2

(N.D.Ga. Oct. 29, 1982) (Forrester, J.), *aff'd without opinion,* 711 F.2d 1069 (11th Cir. 1983). As the Fifth Circuit said in *Daves v. Payless Cashways, Inc.,* 661 F.2d 1022 (5th Cir.1981),

> at some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive. Liberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time. . . . Considering a motion on the eve of trial after discovery and after an unexplained 19-month delay, the trial court acted within its discretion in refusing to allow appellant to amend her complaint. *Id.* at 1025.

This case is almost three years old. Discovery has been had and summary judgment motions have been ruled upon. A pretrial conference has been held. The plaintiff in the counterclaim asserts as justification for the failure to act before this late date that it had no basis for believing that a claim of churning existed until Edwards received certain documents known as the "daily commodity status reports" which provide information regarding the commissions generated on Edwards' account. Without this information, Edwards claims that he was unable to ascertain that a churning cause of action existed. The daily commodity status report, also known as an "equity run" is generated and kept by Drexel Burnham Lambert's home office in New York. Edwards' argument that he could not have alleged churning without the daily commodity status report overlooks one fact. The churning claim was first raised in the pretrial order on February 4, 1983. Edwards did not receive the daily commodity status report until three months later, in May 1983. *See* Defendant Edwards' Memorandum in Opposition to Drexel and Ketchum's Motion to Strike and in Support of Edwards' Motion, in the Alternative, to Amend the Counterclaim at p. 11. Also, defendants in the counterclaim have alleged that the daily commodity status report is in essence a reorganization and retabulation of information already contained in the monthly statements customers receive, plus in-house data on the account. The defendants in the counterclaim have asserted that all of the information contained in the monthly commodity status report had already been produced in some other form prior to that time. Considering these arguments, the court is not persuaded that Edwards could not have asserted a churning claim prior to receiving the daily commodity status report and that there is no persuasive justification for failing to amend the pleadings at a much earlier date. The parties have already invested significant time and money in this case. To allow the amendment at this time would require a reopening of discovery and impose upon the plaintiff and additional defendant additional expense and trouble which would have been unnecessary had Edwards acted in a timely manner. This additional expense and the delay in resolving plaintiff's claim on account filed almost four years ago, is prejudice sufficient to warrant denial of the motion.

The purpose of requiring, insofar as possible, the parties to define their claims and counterclaims at an early date is to allow them to assess, after discovery and research into the law, the merits of their positions and determine whether to settle the case or prosecute it to trial. For almost three years the parties in this case have conducted discovery and assessed their positions based upon the belief that the counterclaim was based upon a fraudulent misrepresentation theory. To allow Edwards to change his theory at this stage would be unfair. If the counterclaim is meritorious it should have been raised earlier, and the parties may have settled the case without going to great expenses of time and money. If the allegations are not meritorious, of course, they should not be allowed anyway.

In sum, plaintiff's and additional defendant's motion to strike is GRANTED as to all allegations of churning and negligent supervision of account contained in the pretrial order which are not relevant to the claims stated in the counterclaim. Defendant Edwards' motion to amend the counter-

claim is DENIED. The parties are DI-RECTED to submit affidavits showing the citizenship of Edwards on December 17, 1980.