Herman **FRIEDLANDER, individually on behalf of himself and all former minority common shareholders of Nimslo Technology, Inc., a Georgia corporation (dissolved), Plaintiffs-Appellees,**

v.

**TROUTMAN, SANDERS, LOCKERMAN & ASHMORE, Defendant-Appellant.**

No. 85–8399.

United States Court of Appeals, Eleventh Circuit.

May 9, 1986.

---

William G. Leonard, Thomas S. Richey, John T. Marshall, Atlanta, Ga., for defendant-appellant.

Edward L. Greenblatt, Henry A. Brachtl, Atlanta, Ga., for plaintiffs-appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

ANDERSON, Circuit Judge:

In this case we must determine the most appropriate state statute of limitations to apply to a claim for a violation of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.-10b-5.

### I.

Friedlander alleges that Troutman, Sanders participated in a scheme to defraud him and other members of the class he represents in connection with the forced sale of stock owned by members of the class. The principal transaction involved in the alleged fraud took place in November 1980. Friedlander brought the instant suit in the federal District Court for the Northern District of Georgia in January 1984.

Friedlander filed a motion to simplify issues, arguing that the four-year statute of limitations for common law fraud claims under Georgia law should be applied to his claim under § 10(b) and Rule 10b-5. Troutman, Sanders moved for summary judgment, contending that the two-year statute of limitations in the Georgia blue sky law should apply to claims under § 10(b) and Rule 10b-5.

In an order dated October 15, 1984, the district court granted Friedlander's motion to simplify issues and denied Troutman, Sanders' motion for summary judgment as to the statute of limitations question. *Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 595 F.Supp. 1442, 1452 (N.D.Ga.1984). The district court held that the four-year limitations period applicable to Georgia common law fraud claims should govern this § 10(b) and Rule 10b–5 action. *Id.* at 1451.

On October 24, 1984, Troutman, Sanders moved the district court to certify the October 15, 1984 order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On April 19, 1985, the district court granted Troutman, Sanders' request because there was "a substantial ground for difference of opinion as to the choice of a limitations period, which is a controlling issue in this action." Record on Appeal, vol. 4 at 1140. Troutman, Sanders petitioned this court for leave to appeal and this court granted the petition on May 21, 1985.

## II.

No federal statute provides a specific statute of limitations for private rights of action asserted under § 10(b) and Rule 10b–5. In order to fill that void, federal courts borrow the most appropriate statute of limitations of the forum state. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *Diamond v. Lamotte*, 709 F.2d 1419, 1421–22 (11th Cir.1983). The state limitations period applicable to the most analogous state law is applied to the federal cause of action, unless "the state limitations period is inconsistent with the policies expressed in the federal statutes." *Diamond*, 709 F.2d at 1421 (citations omitted).

The district court rejected Troutman, Sanders' argument that there should be a uniform limitations period for all § 10(b) and Rule 10b–5 claims arising in Georgia.

It found that "a court must, in every case, consider state law in the context of plaintiff's particular claim." *Friedlander*, 595 F.Supp. at 1445. The district court "resist[ed] the temptation of drawing an analogy between federal and state statutes rather than between federal and state claims merely for the sake of convenience." *Id.* The court decided that it could not "merely ... find a state *law* generally analogous to a federal *law* relied upon by a plaintiff when the analogy does not apply to plaintiff's specific claim." *Id.* (emphasis in original). Applying its claim-by-claim approach, the district court selected the four-year statute of limitations for general fraud actions as the most analogous, primarily because the Georgia blue sky law would provide no remedy for a seller like Friedlander, although such a remedy would have been available to a purchaser.

In holding that a federal court must select state limitations periods on a claim-by-claim, rather than a statute-by-statute, basis, the district court relied on several decisions of this court dealing with the appropriate limitations period for claims arising under a different statute, i.e., 42 U.S.C. §§ 1981, 1983. *Id.* (citing *Scarlett v. Seaboard Coast Line Railroad Co.*, 676 F.2d 1043, 1050–51 (5th Cir. Unit B 1982);[1] *Whatley v. Department of Education*, 673 F.2d 873, 875–78 (5th Cir. Unit B 1982); *Beard v. Stephens*, 372 F.2d 685, 690 (5th Cir. 1967)). According to the principles announced in the cases cited by the district court, different actions under §§ 1981 and 1983 are subject to different limitations periods according to the type of wrong alleged. Moreover, different counts alleged in the same action may be subject to different periods of limitations.

Since the district court issued its order, the Supreme Court has overruled this line of § 1983 cases. *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254

---

1. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

(1985). In *Wilson*, the Supreme Court ruled that a single limitations period must be selected to apply to all claims arising under 42 U.S.C. § 1983 in a given state.[2] The Supreme Court noted that " '[f]ew areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations.' " *Id.* at ——, 105 S.Ct. at 1942 (quoting *Chardon v. Fumero Soto*, 462 U.S. 650, 667, 103 S.Ct. 2611, 2621, 77 L.Ed.2d 74 (1983) (Rehnquist, J., dissenting)). In *Wilson*, the Supreme Court held: (1) where federal law is sufficiently available to decide the question, the characterization of the claim for statute of limitations purposes is a matter of federal law; (2) all § 1983 claims arising in a single state should be subject to a single statute of limitations—expressly rejecting the position that each different claim "should be evaluated differently depending upon the varying factual circumstances and the legal theories presented in each individual case," *id.* at ——, 105 S.Ct. at 1943; and (3) after exploring the nature and purpose of § 1983 claims, the Court concluded that such "claims are best characterized as personal injury actions," *id.* at ——, 105 S.Ct. at 1949, and the state limitations period for personal injury actions should be applied to § 1983 actions.

### A. *Characterization of Rule 10b–5 Claims As A Matter of Federal Law*

Addressing the first question, the *Wilson* Court stated that "[i]n borrowing statutes of limitations for other federal claims, this Court has generally recognized that the problem of characterization 'is ultimately a question of federal law.' " *Id.* at ——, 105 S.Ct. at 1944 (footnote omitted) (quoting *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 706, 86 S.Ct. 1107,

1113, 16 L.Ed.2d 192 (1966)); *see also United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 60–61, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981). Moreover, the Court stated, "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." —— U.S. at ——, 105 S.Ct. at 1944. On the facts of the case before it, the Court found that the characterization of § 1983 for statute of limitations purposes was derived from matters of federal law—the elements of the cause of action and Congress' purpose in providing it. *Id.* at ——, 105 S.Ct. at 1943. Therefore, since the Court found that there was federal law available to decide the question, it concluded that the characterization of § 1983 should be treated as a federal question. *Id.*

In the instant case, too, the elements of a cause of action under § 10(b) and Rule 10b–5 are matters of federal law.[3] Congress' purpose in enacting § 10(b) is also a matter of federal law.[4] Thus, the characterization of an action under § 10(b) and Rule 10b–5 for statute of limitations purposes is a matter of federal law.

### B. *Claim-by-Claim Approach Rejected*

In undertaking the second step of its analysis, the Supreme Court in *Wilson* stated:

> If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim. Moreover, under such an approach different statutes of limitations

---

2. The same single limitations period should apply to § 1981 claims. *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 120 (3d Cir.1985).

3. The elements of a cause of action under § 10(b) and Rule 10b–5 are: "(1) false representation of a material fact (2) made with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's dam-

ages." *Diamond v. Lamotte*, 709 F.2d at 1422–23 (citations omitted).

4. Section 10(b) was designed as a " 'catchall' clause to enable the Commission 'to deal with new manipulative [or cunning] devices.' " *Ernst & Ernst v. Hochfelder*, 425 U.S. at 202–03, 96 S.Ct. at 1385 (brackets in original; quoting legislative history).

would be applied to the various § 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case.

*Id.* at ——, 105 S.Ct. at 1946 (footnotes omitted).[5]

The Supreme Court concluded that "[t]here is no reason to believe that Congress would have sanctioned this interpretation of its statute." *Id.* Instead, the Supreme Court found that the "federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored," *id.* at ——, 105 S.Ct. at 1947, the selection, in each state, of "the one most appropriate statute of limitations for all § 1983 claims." *Id.*

The federal interests considered in *Wilson* are no less important in selecting limitations periods for actions under § 10(b) and Rule 10b–5 than they are in selecting such periods under § 1983. The comprehensive scheme of statutes and regulations designed to police the securities industry is indicative of a strong federal interest. The interstate purchase or sale of any security must comply with Rule 10b–5. Section 10(b) and Rule 10b–5 are frequently the basis of securities actions in federal court. Moreover, the statute of limitations applicable to the action is a frequently litigated issue. For example, the appropriate statute of limitations has been litigated in the following cases brought in federal district courts in Georgia: *Kennedy v. Tallant*, 710 F.2d 711 (11th Cir.1983); *Diamond v. Lamotte*, 709 F.2d 1419 (11th Cir.1983); *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888 (5th Cir.1979); *Miller v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 572 F.Supp. 1180, 1184 (N.D.Ga.1983); *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 672 (N.D.Ga.1983); *Osterneck v. E.T.*

*Barwick Industries, Inc.*, 79 F.R.D. 47 (N.D.Ga.1978); *Mooney v. Tallant*, 397 F.Supp. 680 (N.D.Ga.1975). Other cases in this circuit which have recently litigated this issue include: *White v. Sanders*, 650 F.2d 627 (5th Cir. Unit B 1981); *First Federal Savings & Loan Ass'n v. Mortgage Corp. of the South*, 650 F.2d 1376, 1378 (5th Cir.1981); *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339 (5th Cir.1981); *Dupuy v. Dupuy*, 551 F.2d 1005 (5th Cir.), *cert. denied*, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977); *Nortek, Inc. v. Alexander Grant & Co.*, 532 F.2d 1013, 1015 (5th Cir.), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977); *Hudak v. Economic Research Analysis, Inc.*, 499 F.2d 996 (5th Cir.1974); *Byrne v. Gulfstream First Bank & Trust Co.*, 528 F.Supp. 692 (S.D.Fla.1981), *aff'd*, 720 F.2d 686 (11th Cir. 1983).

If we followed the district court's claim-by-claim approach and applied a two-year statute of limitations to actions brought by purchasers, *see Diamond v. Lamotte*, 709 F.2d 1419, and a four-year period to actions brought by sellers, litigation would be more complex, more uncertain, and lacking in uniformity. For example, in a churning action, half of the transactions involve the plaintiff as a purchaser and half as a seller. It is uncertain whether a single statute of limitations would apply or whether a two-year statute of limitations would apply to purchaser claims and a four-year statute of limitations to the seller claims. Moreover, the latter approach would certainly be awkward and more complex. Second, where the plaintiff has exchanged stocks for stocks, e.g., as part of a merger, it is not clear whether he should be considered a purchaser or seller. Third, many securities transactions, e.g., purchases of puts, involve elements of purchase and sale.[6]

---

**5.** In two footnotes supporting the statements it made in the second sentence quoted above, the Supreme Court used as examples two of the three cases cited by the district court for the proposition that a claim-by-claim rather than a statute-by-statute analysis should be undertaken. —— U.S. at —— n. 32 & 33, 105 S.Ct. at 1947 n. 32 & 33 (citing, among other cases, *Whatley v. Department of Education*, 673 F.2d 873 (5th Cir.

Unit B 1982), and *Beard v. Stephens*, 372 F.2d 685 (5th Cir.1967)).

**6.** The claim-by-claim analysis adopted by the district court assumes that any action maintainable under § 10(b) and Rule 10b–5 can be brought under the Georgia blue sky law, the general fraud law, or some other Georgia statute. There is no indication that this will be true

Faced with similar complexity and uncertainty in *Wilson,* the Supreme Court pointed out:

> On a human level, uncertainty is costly to all parties. Plaintiffs may be denied their just remedy if they delay in filing their claims, having wrongly postulated that the court would apply a longer statute. Defendants cannot calculate their contingent liabilities, not knowing with confidence when their delicts lie in repose.

for every § 10(b) action. The absence of any comparable state remedy would make such a claim-by-claim analysis even more confusing, uncertain, and complex.

7. Friedlander argues that "there is no federal policy requiring uniform limitations periods for all private securities litigation ... for Congress has itself provided and permitted varied limitations." Appellee's Brief at 42. Friedlander contends that because different causes of action under the federal securities laws are governed by varying periods of limitations, there is no federal interest in the uniformity of limitations periods for § 10(b) and Rule 10b–5 actions.

The existence of different periods of limitations under various sections of the securities statutes does not demonstrate that Congress would have approved the existence of more than one statute of limitations for § 10(b) and Rule 10b–5 actions within one state. For each statutory right of action provided in the securities laws, there is only one express statute of limitations which applies to all claims asserted under the statutory section. *See, e.g.,* (15 U.S.C. § 77m) (the varying periods of limitation provided in § 13 of the Securitites Act of 1933 for actions brought under §§ 11, 12(1), and 12(2)). 15 U.S.C. § 77m. A single statute of limitations for all claims asserted under § 10(b) and Rule 10b–5 would therefore be consistent with statutorily provided periods of limitations.

Although the civil rights laws also contain multiple statutory periods of limitations, *compare, e.g.,* 42 U.S.C. § 1986 *with* 42 U.S.C. §§ 2000e–5(e), (f)(1), the Supreme Court in *Wilson* only required that all actions brought under § 1983 be subject to one statute of limitations within each state. It did not require that all civil rights actions be brought within the same period in each state. Thus, the variety of periods of limitations provided in the civil rights statutes did not convince the Supreme Court that uniformity with regard to all claims brought under one section of those statutes was inconsistent with federal policy. Similarly, there is no reason to believe that the statutory provision of different periods of limitation for different statutory sections in the securities law

*Wilson v. Garcia,* —— U.S. at —— n. 34, 105 S.Ct. at 1947 n. 34.

■ In light of the Supreme Court's decision in *Wilson v. Garcia* and the strong federal interests in uniformity,[7] certainty, and minimization of unnecessary litigation in determining the appropriate statute of limitations for § 10(b) and Rule 10b–5 claims, we hold that the federal courts must select, in each state, one most appropriate statute of limitations for § 10(b) and Rule 10b–5 claims whether asserted by sellers or by purchasers.[8]

demonstrates that there is federal policy against uniformity.

In *Ernst & Ernst v. Hochfelder,* 425 U.S. at 210 n. 29, 96 S.Ct. at 1389 n. 29, the Supreme Court has noted that in selecting the appropriate state law period of limitations to apply to § 10(b) and Rule 10b–5 claims, "it is not always certain which state statute of limitations should be followed." Friedlander argues that this indicates that the Court has approved the claim-by-claim approach to this problem. However, this footnote appears to do little more than approve the process of arriving at a statute of limitations by analogizing to state law actions and note the frequent difficulty in ascertaining what the appropriate state law is.

To support this same argument, Friedlander also relies on the district court's statement that "[u]niformity in securities litigation is hardly a principle of federal policy." *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 595 F.Supp. at 1451 (citations omitted). In making this statement, the district court relied on the opinion of this court in *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d at 891–92. The decision in *McNeal* noted the lack of uniformity which resulted from the selection of a period of limitations based on state law and made on a claim-by-claim basis. Since the Supreme Court has disapproved of the lack of uniformity which results from selecting periods of limitations on a claim-by-claim basis, the varied results which follow from that process can no longer serve—if they ever could—to support the proposition that there is a federal policy favoring nonuniformity.

8. This court has recently suggested in dicta that a case-by-case approach to selecting periods of limitations in RICO cases, 18 U.S.C. §§ 1951–1968, may be precluded by the decision in *Wilson v. Garcia. Hunt v. American Bank & Trust Co. of Baton Rouge,* 783 F.2d 1011, 1014 n. 4 (11th Cir.1986). The court stated:

> This reasoning [from *Wilson v. Garcia*] would seem to apply with equal force to RICO claims, which can be based upon an assortment of criminal acts. Although there is

## C. *The Georgia Blue Sky Law Is Most Analogous*

The third step in the *Wilson* analysis is the characterization of the statutory claim, the selection of the most analogous state statute, and the application of the statute of limitations period for that state statute. Troutman, Sanders suggests that the Georgia Securities Act offers the best analogy to a § 10(b) and Rule 10b–5 claim. Section 12 of the Act, O.C.G.A. § 10–5–12 (1982), describes certain unlawful practices. Subsection (a) prohibits certain behavior in connection with the offer and sale of any security. Subsection (d), in language very similar to the language of Rule 10b–5, makes unlawful certain fraudulent schemes or acts which would defraud or deceive a purchaser or seller of securities.

Section 14 of the Act, O.C.G.A. § 10–5–14, concerns civil liability for violation of § 12. Subsections (a) and (b) of § 14 create civil liability for violations of subsection 12(a). The statute of limitations—two years after the date of the unlawful sale of securities—is provided in § 14(c). There is no remedy expressly provided under § 14 for violations of § 12(d). *See Diamond v. Lamotte,* 709 F.2d at 1423. Thus, the state blue sky law would provide a remedy to a purchaser under § 12(a), but the state law is uncertain as to whether a private cause of action for a seller would be implied under § 12(d).

Friedlander suggests that the Georgia general fraud and deceit statutes, O.C.G.A. §§ 51–6–1, 51–6–2 (1982), are the most analogous to § 10(b) and Rule 10b–5 actions. Actions for damages under the fraud and deceit statutes are, under Georgia law, actions for injuries to personalty. *McNeal,* 598 F.2d at 893 n. 10. They are subject to the four-year limitation for injuries to personalty under O.C.G.A. § 9–3–31. 598 F.2d at 893 n. 10.

The district court concluded that there is no private cause of action[9] for a seller under § 12(d) of the Georgia Act and thus that no comparable cause of action for a defrauded seller exists under the Georgia Securities Act. For this reason, the district court concluded that the limitations period provided in the Georgia Securities Act could not be employed as an analog to Rule 10b–5. *Friedlander,* 595 F.Supp. at 1449. Alternatively, the district court examined the other three factors set out in *Diamond*

---

probably no good reason to analogize RICO to the same cause of action in every state—some states, for instance, have enacted state versions of RICO which no doubt more closely resemble the federal cause of action than does common law fraud—the key lesson of *Wilson* seems to be that there should be applied "in each State ... the one most appropriate statute of limitations," [105 S.Ct.] at 1947 for all RICO actions.

*Id.* One recent decision has adopted the *Wilson* statute-by-statute analysis in RICO actions:

These [*Wilson v. Garcia* ] concerns are just as strong in a civil RICO case. As with § 1983, RICO actions can be brought on a great variety of facts, so that in many cases the lawyers will be able to argue that 2 or more limitations periods apply. Also as with § 1983, different limitations periods could be applied to actions with different facts in the same state, and sometimes even in the same case. Therefore, this court concludes that one characterization must be adopted for all RICO actions in this state.

*Electronics Relays (India) Pvt. Ltd. v. Pascente,* 610 F.Supp. 648, 650 (N.D.Ill.1985) (footnote omitted).

In selecting among state actions to determine which is most analogous to an action under § 303 of the federal Labor Management Relations Act, 29 U.S.C. § 187, the Sixth Circuit has recently rejected the case-by-case analysis it formerly employed. *Carruthers Ready-Mix, Inc. v. Cement Masons Local Union,* 779 F.2d 320 (6th Cir.1985). Prior to its decision in *Carruthers,* the Sixth Circuit had characterized an action under § 303 as a Tennessee court would—by focusing on the kind of damage alleged—and had selected different periods of limitations in different cases according to the type of injury involved. *Id.* at 324–25. In *Carruthers,* the Sixth Circuit began to characterize actions under § 303 in light of the nature of the federal claim and the federal policies involved. *Id.* at 325. The court found that such an analysis of the elements of a claim under § 303 directed the application of only one of the two previously employed state periods of limitations. *Id.*

9. *Rothenberg v. Security Management Co.,* C77–150A (N.D.Ga. June 30, 1977), held, contrary to the court below, that Georgia courts would imply a private cause of action for a seller under § 12(d) of the Georgia Securities Act. Because of the analysis we employ in disposing of this case, we need not resolve that conflict.

*v. Lamotte* —scienter, reliance and purposes of the statutes—along with the relief available under each of the statutes to determine which of the two statutes was more analogous. Again, the district court concluded that the general fraud and deceipt statutes were more analogous to this plaintiff's § 10(b) and Rule 10b–5 claim, again based largely on the premise that the Georgia Securities Act would provide no remedy for a seller, though the district court also was influenced by its belief that the Georgia Securities Act did not require reliance and that the scienter requirement was uncertain.

█ Since we have decided that a statute of limitations must be selected on a statute-by-statute basis and since the district court's analysis was done on a claim-by-claim basis, we need not rule on the correctness of the district court's selection of the Georgia general fraud statute. Because we are proceeding on the statute-by-statute basis, we must decide what Georgia statute is the most analogous for purposes of all suits brought under § 10(b) and Rule 10b–5—i.e., both suits brought by purchasers and suits brought by sellers. Thus, the difference which the district court found to be controlling in this case—that as a defrauded seller Friedlander would not be able to state a cause of action under the Georgia securities law—should not be determinative of the statute we select as being more analogous to § 10(b) and Rule 10b–5. Approaching the question on a statute-by-statute basis, we find that the Georgia blue sky law is more analogous to § 10(b)˙and Rule 10b–5.

First, the purpose of the Georgia Securities Act is the same as the purpose of the federal securities laws. The Georgia Securities Act promotes the full, accurate disclosure of information and protects against fraud in connection with the sales of securities, precisely the same purpose as that of § 10(b) and Rule 10b–5. As this court noted in *Diamond v. Lamotte:*

> Without doubt the blue sky statute is more closely attuned to securities fraud than generalized common law fraud....

The blue sky cause of action serves to supplement the relief available to a defrauded purchaser of securities and therefore particularizes a securities fraud case.

709 F.2d at 1424.

Second, the language of the Georgia Securities Act substantially tracks language of the federal securities statutes. As we have already mentioned, the language of § 12(d) of the Georgia Securities Act is substantially the same as the language of Rule 10b–5.

Third, the case law in this circuit indicates that the Georgia blue sky law is more analogous to § 10(b) and Rule 10b–5 than the general fraud statute because of the closeness of purpose and language and some similarity in the elements of the actions. In the two most recent cases analogizing § 10(b) and Rule 10b–5 to Georgia law, this court has approved the selection of the Georgia blue sky law as the most analogous statute. *Kennedy v. Tallant,* 710 F.2d 711; *Diamond v. Lamotte,* 709 F.2d 1419. Moreover, in *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352 (11th Cir. 1985), a case involving a private right of action implied under Rule 10b–16, we noted:

> In *Diamond,* we concluded that the most appropriate Georgia statute of limitations to "borrow" in an action for damages under § 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 was the two-year limitations period found under the Georgia blue sky law, rather than the four-year period governing common law fraud claims. 709 F.2d at 1421–24.

*Greenblatt,* 763 F.2d at 1356 n. 5. Similarly, the district court cases listed *supra* slip op. p. 1504 have all settled on the blue sky law as the most analogous to a Rule 10b–5 claim. *See, e.g., Miller,* 572 F.Supp. at 1184 ("[I]t is now well established that the appropriate statute of limitations for an action brought under Rule 10b–5 is the two-year statute of limitations of the Georgia Securities Act.").

There is one case in this circuit where the four-year limitations period of Georgia's common law fraud action was applied to a Rule 10b–5 claim. In *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888 (5th Cir.1979), the former Fifth Circuit chose that law as most analogous to a claim for churning under Rule 10b–5. The *McNeal* panel found that the Georgia blue sky law provided no remedy for a churning claim. Treating the factor as determinative, the court found the general fraud statute most analogous. Since *McNeal* was decided pursuant to a claim-by-claim basis, its analysis retains no vitality for the same reasons that the district court in this case erred.

Other cases decided by this court have also generally selected a state's blue sky law over its general fraud law when analogizing to § 10(b) and Rule 10b–5 actions. *See, e.g., White v. Sanders,* 650 F.2d 627 (5th Cir. Unit B 1981); *Dupuy v. Dupuy,* 551 F.2d 1005 (5th Cir.1977). Although it may have been decided on a claim-by-claim basis and although the Alabama blue sky statute differed from the federal securities law in two of the same ways that the Georgia blue sky statute differs from Rule 10b–5, the *White* court found the blue sky statute to be analogous in general to § 10(b). *See Hunt v. American Bank & Trust Co. of Baton Rouge,* 783 F.2d 1011, 1013 n. 2 (11th Cir.1986) (dicta) ("Our decision in *White,* however, was based on the *general* similarity of blue sky actions in Alabama to actions brought under [§ 10(b) and Rule 10b–5]; it did not focus on the nature of the particular cause of action at hand."). The court noted that the blue sky law allowed recovery for purchasers only, whereas Rule 10b–5 provides redress for defrauded purchasers and sellers. Second, the court noted that the Alabama blue sky statute, like the Georgia blue sky statute,[10] does not clearly require the element of scienter—which is a requirement in Rule 10b–5 actions. *See Ernst & Ernst v. Hoch-*

*felder,* 425 U.S. 185, 206, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976). However, *White* concluded that "[t]hose features which do distinguish the Alabama and federal securities laws are, we believe, outweighed by their greatest similarity—an undeniable 'commonality of purposes.'" *White v. Sanders,* 650 F.2d at 632 (citations omitted).

One of the cases heavily relied on by this court in *White v. Sanders* was *O'Hara v. Kovens,* 625 F.2d 15 (4th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981), which compared an action under the Maryland blue sky law to a Rule 10b–5 action. In the *O'Hara* case, the court found some discrepancies in its claim-by-claim analysis. The plaintiffs were sellers rather than purchasers—the situation in the instant case. Moreover, the Maryland blue sky law did not require scienter. Nevertheless, the Fourth Circuit held that these claim-by-claim distinctions were outweighed by "the simple truth that the federal and state statutes at issue here were designed to achieve similar ends." 625 F.2d at 18. "By comparison, the shared purposes between § 10(b) and common law fraud are generalized at best." *Id.*

In *Dupuy v. Dupuy,* this court compared the Louisiana blue sky law with Rule 10b–5 and found that the Louisiana law prohibited only misrepresentations by sellers and required only negligence not scienter. Despite these claim-by-claim differences, this court found that the purposes of the state blue sky law and the federal securities law were "precisely the same" and selected the securities law as most analogous. *Dupuy,* 551 F.2d at 1024 n. 31.

The only recent decision other than *McNeal* where this court selected a state's general fraud statute over its blue sky law is *Wood v. Combustion Engineering, Inc.,* 643 F.2d 339 (5th Cir. Apr. 24, 1981). However, *Wood* is distinguishable, as the deci-

---

**10.** Following this court's analysis in *Diamond v. Lamotte,* the district court found that "the requirement of scienter under the state blue sky law is uncertain at best." *Friedlander,* 595 F.Supp. at 1450. *See Diamond v. Lamotte,* 709 F.2d at 1423. Given our disposition of the case, we need not resolve the question of whether or not the Georgia blue sky law requires scienter.

sion in *White v. Sanders* points out. *White v. Sanders*, 650 F.2d at 632. As noted in *White*, the Texas blue sky statute and the Texas general fraud statute described in *Wood* were different from the Alabama blue sky statute and general fraud statute involved in *White*. The Texas blue sky statute lacked a counterpart to Rule 10b–5. In contrast, the Alabama blue sky statute had a section which, like § 12(d) of the Georgia securities statute, tracks the language of Rule 10b–5. Moreover, the Texas fraud statute examined in *Wood* specifically addressed fraud in stock transactions whereas the common law fraud cause of action available in Alabama was, as it is in Georgia, a catchall provision. Thus, under a statute-by-statute analysis, the Texas general fraud statute might be most analogous, a question which we expressly do not decide.

In sum, the case law in this circuit has held that the language and purposes of the Georgia blue sky law make it "[w]ithout doubt ... more closely attuned to securities fraud than generalized common law fraud." *Diamond v. Lamotte*, 709 F.2d at 1424 (citing *White v. Sanders*, 650 F.2d at 632–33).

 Based on the commonality of purpose between the Georgia blue sky law and § 10(b) and Rule 10b–5, based on the similarity of language, and based on the case law in this circuit, our examination of the nature and purpose of the several statutes leads us to the conclusion that the Georgia blue sky law is most analogous to § 10(b) and Rule 10b–5. Thus, the two-year statute of limitations should be applied here.[11]

### III.

In conclusion, we hold that federal law governs the characterization of the § 10(b) and Rule 10b–5 claim for purposes of selecting a statute of limitations. One most appropriate statute of limitations must be selected in each state for all § 10(b) and Rule 10b–5 claims. The Georgia statute most analogous to § 10(b) and Rule 10b–5 is the Georgia Securities Act. We conclude that the two-year statute of limitations applicable to actions under § 12 of the Georgia Securities Act must be applied to actions under § 10(b) and Rule 10b–5.

Friedlander argued below that the period of limitations had been tolled. Because the district court found that the appropriate period of limitations was four years, it found it unnecessary to decide whether the period of limitations had been tolled. Because the period of limitations applicable to a Georgia blue sky action is two years, we must remand this case to the district court to consider that issue and any other unresolved issues in the case.

REVERSED and REMANDED.

**11.** The state limitations period selected must be consistent with "the policies expressed in the federal statutes." *Diamond v. Lamotte*, 709 F.2d at 1421 (citations omitted). Neither party has suggested that federal policy is inconsistent with the two year period provided under the Georgia blue sky law, which has recently been applied in *Diamond v. Lamotte* and *Kennedy v. Tallant*, 710 F.2d 711 (11th Cir.1983).