**Louise VARGAS, Plaintiff,**

v.

**The SALVATION ARMY, an Illinois corporation, Defendant.**

**No. 86 C 4612.**

United States District Court, N.D. Illinois, E.D.

Dec. 12, 1986.

---

William C. Starke, Chicago, Ill., for plaintiff.

Harry Sangerman, McDermott, Will & Emery, Chicago, Ill., for defendant.

## MEMORANDUM

LEIGHTON, Senior Judge.

This is a suit by a former employee who alleges that she was discharged from her employment because of her race. Defendant moves to dismiss pursuant to Fed.R. Civ.P. 12(b)(6). It asserts three grounds: first, that plaintiff's § 1981 and § 1983 claims are barred by the applicable Illinois statute of limitations; second, that on the facts alleged, a § 1983 claim has not been stated; and third, that plaintiff has not alleged a claim of racial discrimination. The facts, accepting the allegations as true, *e.g. Doe v. Saint Joseph's Hospital,* 788 F.2d 411, 414 (7th Cir.1986), are as follows.

## I

Plaintiff, Louise Vargas, and defendant, the Salvation Army, entered into an oral agreement, on July 14, 1977, whereby plaintiff was employed by defendant; her wages were $3.35 per hour. Thereafter,

plaintiff was promoted to store manager and received a 15 cent per-hour raise. On March 16, 1983, the store supervisor stated to witnesses that he no longer wished to have plaintiff assume duties associated with the cash register. On that same day, the supervisor asked a store clerk to turn over the money in the cash register to him, a sum of $610.00. No receipt was transferred.

The following day, when plaintiff arrived at work, the store supervisor requested that she come to his office. Once there, the supervisor told her that he believed she had taken the $610.00; and for that reason, she was discharged. Thereafter, plaintiff requested from defendant a hearing on the discharge. The request was denied. Based on these facts, plaintiff filed her one-count complaint pursuant to 42 U.S.C. §§ 1981 and 1983.

## II

### A. *Statute of Limitations*

Defendant argues that plaintiff's § 1981 and § 1983 claims are barred by the applicable statute of limitations. Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all law and proceedings for the security of persons and property as is enjoyed by white citizens.

It contains no statute of limitations. In such a situation, this court must follow the three-step process outlined in 42 U.S.C. § 1988 when determining the applicable limitations period. First, the laws of the United States apply, "so far as such laws are suitable to carry ... into effect" the statute at hand. Second, if no federal rule exists, the court should apply the "common law, as modified and changed by the constitution and statutes" of the forum state. Third, the court must be certain that the state law "is not inconsistent with the Constitution and laws of the United States."

42 U.S.C. § 1988; *see also Burnett v. Grattan*, 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928–29, 82 L.Ed.2d 36 (1984). As to the first step, it is well settled that no federal limitation period is suitable to carry into effect the civil rights statutes, accordingly, federal courts must look to state law to determine the appropriate statute of limitations. *Burnett*, 468 U.S. at 48, 104 S.Ct. at 2929.

In *Beard v. Robinson*, 563 F.2d 331 (7th Cir.1977), the court of appeals for this circuit held that all claims brought pursuant to the Civil Rights Acts were controlled by the Illinois five-year statute of limitations governing "all civil actions otherwise not provided for," Ill.Rev.Stat. ch. 110, ¶ 13–205 (1985). *Beard*, 563 F.2d at 338. While the court's analysis concerned claims brought pursuant to 42 U.S.C. § 1983, it subsequently held that the same five-year limitation period applied to § 1981 claims. *Teague v. Caterpillar Tractor Co.*, 566 F.2d 7, 8 (7th Cir.1977).

After *Beard* and *Teague*, the law in this circuit was clear: Illinois plaintiffs had five years from the date their cause of action accrued in which to file a § 1981 claim. In this case, plaintiff's cause of action accrued on March 17, 1983, the date of her dismissal. She filed her complaint on June 25, 1986, well within the five-year deadline. Accordingly, if *Beard* and *Teague* apply, her claim is timely. However, on April 17, 1985, the Supreme Court held in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that in all states, the most analogous statute of limitations for all § 1983 actions is the state's personal injury statute of limitations. *Wilson*, 105 S.Ct. at 1949. The Court's holding "explicitly mandated" a different statute of limitations from the one previously held applicable to Illinois plaintiffs; at least with regard to § 1983 claims. *Anton v. Lehpamer*, 787 F.2d 1141, 1144 (7th Cir.1986).

The limitations period now controlling § 1983 claims is the two-year personal injury statute set forth in Ill.Rev.Stat. ch. 110, ¶ 13–202 (1985). *Anton*, 787 F.2d at 1142. This court is of the opinion that the

same two-year limitations period applies to § 1981 claims. The court of appeals for this circuit has previously held that the same statute of limitations period should apply to both § 1983 and § 1981 claims. *Teague*, 566 F.2d at 8. *Teague* was based on uniformity of result, that is, the court of appeals was of the opinion that the same statute of limitations should apply to all Civil Rights Act claims. *See Movement for Opportunity and Equality v. General Motors Corp.*, 622 F.2d 1235, 1243 (7th Cir. 1980). "[T]he choice of a statute of limitations under section 1981 (for discriminatory actions by private individuals) is essentially the same choice to be made under 42 U.S.C. § 1983 (1976) (for discriminatory actions under color of state law)." *Movement for Opportunity*, 622 F.2d at 1243.

From this, it is clear that the two-year statute of limitations now controlling § 1983 claims also applies to § 1981. Just as *Beard* governed *Teague*, *Anton* governs this case and the two-year statute of limitations applies. *See Movement for Opportunity*, 622 F.2d at 1243.[1] Further, the reasoning of *Wilson* mandates the same result. *See Banks v. Chesapeake & Potomac Telephone Co.*, 802 F.2d 1416, 1421–23 (D.C.Cir.1986); *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 120 (3d Cir.1986); *Saldivar v. Cadena*, 622 F.Supp. 949, 957 (W.D. Wis.1985); *see also Friedlander v. Troutman*, 788 F.2d 1500, 1503 n. 2 (11th Cir. 1986).

In *Wilson*, the Court held that "uniformity, certainty and the minimization of unnecessary litigation" mandates selection in each state, of the one most appropriate statute of limitations for § 1983 claims. *Wilson*, 105 S.Ct. at 1947. The Court went on to conclude that because § 1983 was enacted as a remedy for an injury to the individual right of the person, claims brought pursuant to it are best characterized as personal injury actions and accordingly held the statute of limitations governing personal injury actions controlling. *Wilson*, 105 S.Ct. at 1949.

These same considerations apply to § 1981 claims. While actions brought under the statute may be characterized as suits to enforce contracts, *Ruyen v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), to ensure equal treatment under the law, *Littleton v. Berbling*, 468 F.2d 389, 408 (7th Cir.1972), *rev'd on other grounds*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), to enforce the right to sue, *Commonwealth of Pennsylvania v. Local Union No. 542*, 347 F.Supp. 268, 287–290 (E.D.Pa.1972), *aff'd*, 478 F.2d 1398 (3d Cir.1973), or to secure the benefits of society, *Jennings v. Patterson*, 488 F.2d 436, 442 (5th Cir.1974), the need for certainty and uniformity mandate that all § 1981 claims be governed by one statute of limitation. *Banks*, 802 F.2d at 1421; *see also Wilson*, 105 S.Ct. 1947. Further, the one limitation period most analogous to § 1981 claims is the one governing personal injury suits.

Upon enactment, the objective of § 1981, as with all of the Reconstruction-Era civil rights statutes, was "to ensure that individuals whose federal Constitutional or statu-

---

1. The limitations period in a § 1981 case should follow the one for a § 1983 case absent a "more closely analogous" statute of limitations. *Movement for Opportunity*, 622 F.2d at 1243. It is arguable that because § 1981 on "its face relates primarily to racial discrimination in the making and enforcement of contracts," *Johnson v. Railway Agency Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975), the limitations period for contract actions, Ill.Rev.Stat. ch. 110, ¶ 13–205, 206 (1983), is more closely analogous and should therefore apply. However, such an argument fails to recognize the broad sweep of § 1981. *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 119 (3d Cir.1985). The statute can be used to bring claims character-

ized under many different theories and to enforce rights other than contractual ones. *See infra* p. 766; *contra DiPasalgne v. Elby's Family Restaurants, Inc.*, 640 F.Supp. 1312, 1315 (S.D. Ohio 1986). Further, it fails to take into account the necessity of uniformity. A plaintiff may bring § 1981 and § 1983 claims based on the same facts and be allowed to proceed under § 1981, because of the longer contract limitations period, but be barred from pursuing the § 1983 claim due to the running of the statute. Such a result fosters the exact type of uncertainty and confusion which the *Wilson* court found repugnant to the intentions of Congress in enacting the Civil Rights Acts. *Wilson*, 105 S.Ct. at 1947; *see also Goodman*, 777 F.2d at 120.

tory rights are abridged [could] recover damages or secure injunctive relief." *Burnett*, 468 U.S. at 55, 104 S.Ct. at 2932. The statute was therefore enacted to protect the individual rights of the person. It is therefore clear that as with § 1983, claims brought pursuant to § 1981, are best characterized as personal injury actions and are accordingly controlled by the two-year limitations period set forth in Ill.Rev.Stat. ch. 110, ¶ 13–202 (1983).[2] *See Banks*, 802 F.2d at 1422; *Goodman*, 777 F.2d at 119–20.[3]

■ All of this would indicate that plaintiff's claim is time-barred because her cause accrued in March 1983 and she filed suit in June 1986; past the two-year limit. However, as previously, noted, before *Wilson*, her claim would have been timely. *See Anton*, 787 F.2d at 1144. In this regard, the court of appeals in *Anton* determined that *Wilson* should not be applied retroactively to a plaintiff who brought a claim within the five-year statute of limitations period previously deemed applicable. The court reasoned that such a plaintiff would have relied on the prior statute and expended a significant amount of time and money preparing for trial. Thus, the court concluded that "[r]etroactive application of *Wilson* would not serve justice and would impose a hardship on those plaintiffs who had actually pursued their section 1983 claims." *Anton*, 787 F.2d at 1146.

The court then set out the test for determining whether plaintiff's cause of action is time-barred: "[W]e hold that, in Illinois, a plaintiff whose ... cause of action accrued before the *Wilson* decision, April 17, 1985, must file suit within the shorter period of either five years from the date his action accrued or two years after *Wilson*." *Anton*, 787 F.2d at 1146. That test, applied to this case, makes it clear that plaintiff's claim is not barred. Plaintiff's cause of action accrued on March 17, 1983, the

date of her dismissal. She had five years from that date to file suit. Since she filed her claim on June 25, 1986, approximately three years and three months after her action accrued, plaintiff's § 1981 claim is timely. Similarly, her § 1983 claim is timely since her cause accrued before the *Wilson* decision and she brought suit "within five years from the date [her] action accrued." *Anton*, 787 F.2d at 1146. Accordingly, because her claims are timely, defendant's other grounds for dismissal must be addressed.

## B. State Action

For plaintiff to recover pursuant to § 1983, state action must be present. *E.g. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1976); *Ezpeleta v. Sisters of Mercy Health Corp.*, 800 F.2d 119, 122 (7th Cir. 1986). Defendant argues that the alleged wrongful conduct is in no way attributable to the state and accordingly concludes that plaintiff's § 1983 claim must be dismissed. Plaintiff, on the other hand, takes the position that the requisite state action is present. She argues first, that because a "symbiotic relationship" exists between the Salvation Army and the state, state action is present. Second, that state action exists because the Salvation Army is financed, regulated and controlled by the state. Third, that the Salvation Army's involvement in a "traditionally public function" satisfies the requirement.

■ Where a private party defendant's conduct is so closely related to that of the state so as to receive the imprimatur of the state, it may be said that state action exists. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961); *see also Blum v. Yaretsky*, 457 U.S. 991, 1003, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982). In *Bur-*

**2.** The Supreme Court has previously characterized § 1981 actions as "personal injury" claims. *Runyon v. McCary*, 427 U.S. 160, 179–82, 96 S.Ct. 2586, 2598–600, 49 L.Ed.2d 415 (1976).

**3.** As to the third step of the 42 U.S.C. § 1988 analysis, the court concludes that because

§ 1981 was enacted to protect the individual rights of the person, applying the personal injury statute of limitations is consistent with the Constitution and the laws of the United States. 42 U.S.C. § 1988.

*ton,* the Court held that a privately-owned restaurant, which leased a building located in a parking structure owned by the state, violated the equal protection clause of the Fourteenth Amendment by refusing service to racial minorities. This was so even though the restaurant received no direct financial aid from the government.

The Court considered the following facts and circumstances important in finding state action: (a) the building and land were publicly owned; (b) both the government and restaurant benefited from the restaurant's presence; (c) the building was dedicated to "public uses"; and (d) the state placed its property, power, and prestige behind the racial discrimination. *Burton,* 365 U.S. at 723–25, 81 S.Ct. at 860–61.

In this case, as compared to *Burton,* there is no allegation that the Salvation Army Office is located on property owned by the government. Moreover, there is no allegation that either the state or the Salvation Army benefit from any sort of mutual relationship. Absent these allegations, plaintiff's complaint fails to adequately show a symbiotic relationship so as to satisfy the state action requirement of § 1983. *See Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 175, 92 S.Ct. 1965, 1972, 32 L.Ed.2d 627 (1972).

Plaintiff next argues that state action exists because of the state's regulation and control of the Salvation Army. However, the Supreme Court has refused to find state action merely because some of the actions of a private organization are regulated by the government. *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785. Rather, in order for there to be state action based on licensing or regulation, it must be shown that the government commanded or encouraged the alleged wrongdoing. There must be a "sufficiently close nexus between the State and the challenged action ... so that the action ... may be treated as that of the State itself." *Id.* at 1004, 102 S.Ct. at 2785 (*quoting Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974); *see also Rendell-Baker v. Kohn,* 457 U.S. 830, 841–42, 102 S.Ct.

2764, 2771, 73 L.Ed.2d 418 (1982) (no state action exists where extensively regulated private school discharged teachers, in that school's employment practices were not compelled or influenced by state regulations, but rather were unrelated to the school's educational practices); *Lucan v. Wisconsin Electric Power Co.,* 466 F.2d 638, 653–58 (7th Cir.1972) (actions of the state-regulated defendant electric company not considered state action since the state provided no affirmative support or encouragement).

It is therefore clear that state regulation of a private organization, without more, is insufficient to establish state action. A plaintiff must also show that the state encouraged or sought to influence the organization's decisions. Since plaintiff has not alleged any such encouragement or influence, state action is not present.

Finally, plaintiff argues that state action is present because defendant's activities are those traditionally associated with sovereign governments and exclusively operated by governmental entities. *Citing, Flagg Brothers Inc. v. Brooks,* 436 U.S. 149, 157, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). However, this "public function" doctrine has been recognized in limited situations. *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (operation of elections); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (performing municipal functions of cities and towns).

A review of the cases which have applied the doctrine leads the court to conclude that the Salvation Army does not fall within it. Although care for the sick and elderly are within the government's domain, courts have refused to extend the doctrine to these activities. *See Graves v. Narcotics Services Counsel, Inc.,* 605 F.Supp. 1285 (E.D.Mo.1985); *Fike v. United Methodist Children's Home of Virginia, Inc.,* 547 F.Supp. 286 (E.D.Va.1983).

For these reasons, the requisite state action is not present and the § 1983 claim must be dismissed. *See Ezpeleta,* 800 F.2d

at 122. Nevertheless, plaintiff may have a valid cause under § 1981, since no showing of state action is required in suits brought under that section. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975); *see also Yarbrough Tower Oldsmobile Inc.,* 789 F.2d 508 (7th Cir.1986).

## C. *Racial Discrimination*

■ Plaintiff alleges that she was discriminatorily discharged because of her "race" as a "Mexican-American." She further alleges that this discharge violated her "equal rights" in violation of § 1981. Defendant moves to dismiss arguing that such allegations do not state a claim pursuant to § 1981.[4]

A plaintiff must allege discrimination based on "race" in order to state a claim pursuant to § 1981; "a claim of discrimination based solely on national origin fails to state a cause of action." *Doe v. St. Joseph's Hospital,* 788 F.2d 411, 417–18 (7th Cir.1986) (*quoting Anooya v. Hilton Hotel Corp.,* 733 F.2d 48, 50 (7th Cir.1984). In *Anooya,* plaintiff alleged that he was discharged because of his "Iraqi background" and that he was discriminated against on the basis of his "national origin, Iraq." The court held these allegations insufficient to state a § 1981 claim. "In the absence of an allegation of racial animus, either explicit or reasonably inferable from the pleadings, plaintiff cannot·maintain his section 1981 action." *Anooya,* 733 F.2d at 50.

Two years later, the court of appeals for this circuit decided *Doe v. St. Joseph's Hospital,* 788 F.2d 411 (7th Cir.1986). In *Doe,* the plaintiff alleged that she was "Korean" and that the defendants had discriminated against her on the basis of her race. The court held these allegations sufficient to state a § 1981 claim; it found *Anooya* "plainly distinguishable." The court reasoned that it was not reasonably inferable from an allegation of "Iraqi background" that the plaintiff in *Anooya* belonged to a group distinct from the white race as a matter of race or color; accordingly, no § 1981 claim was stated. *Id.* at 418. In contrast, it was reasonably inferable from an allegation that someone was "Korean," that that person was "Oriental (or Asian)." Therefore, the plaintiff in *Doe* had adequately alleged racial discrimination under § 1981. *Id.* at 418.

Applying the same reasoning to this case, it is clear that an allegation of "Mexican-American" is sufficient to state a cause of action under § 1981. By definition, Mexican means "a person of mixed Spanish and Indian descent." *Webster's New Collegiate Dictionary,* 719 (1979). This definition explicitly refers to a racial mixture distinct from the white race.[5] It is clear that "Mexican Americans" represent a multiracial group of Spanish, Indian and to a lesser extent, African blood. With this in mind, it is reasonably inferable that plaintiff belongs to a group which is distinct from the white race as a matter of race and color and accordingly, the complaint sufficiently states a claim for racial discrimina-

---

**4.** Specifically, defendant argues that plaintiff must allege discrimination because of her "brown race or color" in order to state a cause of action under § 1981. *Citing Carillo v. Illinois Bell Telephone Co.,* 538 F.Supp. 793 (N.D.Ill. 1982) In *Carillo,* the court held that allegations that plaintiff was discriminated against because she was "Hispanic" did not state a claim under § 1981. *Id.* at 797. However, this case is distinguishable in that plaintiff alleges that she was discriminated against on the basis of her "Mexican-American" status, not because she was "Hispanic."

**5.** This definition is supported by an authoritative text dealing with racial and ethnic groups which have settled in this country. S. Thernstrom, *Harvard Encyclopaedia of American Ethnic Groups,* (1980). It states that:

> Possibly the most perplexing and misunderstood general characteristic of Mexican Americans is that of race. In the United States people tend to be placed in simplistic racial categories with no allowance for racially mixed individuals or multiracial groups. Chicanos [Mexican Americans] are not a race, but rather a multiracial group of principally

tion.[6]  *See Al-Khazraji v. Saint Francis College,* 784 F.2d 505, 514–18 (3d Cir.1986); *Gonzalez v. Stanford Applied Engineering,* 597 F.2d 1298, 1300 (9th Cir.1979); *Manzanares v. Safeway Stores Inc.,* 593 F.2d 968, 971 (10th Cir.1979).

In summary, for the reasons stated, defendant's motion to dismiss, as it relates to the § 1983 claim, is granted, and as it relates to the § 1981 claim, is denied.

So ordered.

Spanish and Indian (and to a small degree, African) roots.  *Id.* at 699–700.

**6.** This case is further distinguishable from *Annoya* in that Mexican-Americans, like blacks, have been traditionally victims of group discrimination.  *See e.g., Ortega v. Merit Insurance Co.,* 433 F.Supp. 135 (N.D.Ill.1977).